Maureen CARROLL, Plaintiff,

v.

**BAYERISCHE LANDESBANK, BLB Capital, LLC, Ronald Aldo Bertolini, John Warden, Bert Von Stuelpnagel, Defendants.**

No. 99 Civ. 2892(CBM).

United States District Court, S.D. New York.

May 29, 2001.

Opinion on content of Contract May 30, 2001.

Order dismissing contract action May 31, 2001.

Diane Paolicelli, Levy Phillips & Konigsberg, LLP, New York City, Diana Israelashvili, Wilkes Barre, PA, for Plaintiff.

Brian J. Clark, George Stasuik, Clifton Budd & DeMaria, LLP, New York City, for Defendants.

## MEMORANDUM OPINION AND OR- DER DEFENDANTS' MOTIONS AT END OF PLAINTIFF'S CASE

MOTLEY, District Judge.

Plaintiff Maureen Carroll filed this action on April 21, 1999 against defendants, Bayerische Landesbank ("Bayerische"), BLB Capital, LLC ("BLB"), Ronald Aldo Bertolini ("Bertolini"), John Warden ("Warden"), and Bert von Stuelpnagel ("von Stuelpnagel"), alleging discrimination on the basis of sex, sexual harassment, and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), New York State Human Rights Law, Executive Law § 296 et seq., and the New York City Human Rights Law, Administrative Code § 8–107. Plaintiff also alleges intentional infliction of extreme emotional distress, breach of contract, assault and battery, and defamation, all in violation of New York state law.

On August 26, 1999, Judge Wood granted defendants' motion to dismiss plaintiff's Title VII claims against the individual defendants but denied motions to dismiss plaintiff's intentional infliction of extreme emotional distress claim and defamation claim. On December 13, 2000, this court denied defendants' motion for summary judgment on plaintiff's remaining claims and denied plaintiff's cross-motion for partial summary judgment.

A jury trial in this matter commenced on May 14, 2001. On May 24, 2001, at the close of plaintiff's case, defendants moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure on plaintiff's claims of sexual harassment, retaliation, breach of contract, defamation, assault and battery, and intentional infliction of emotional distress. After hearing the parties argue defendants' motion orally, this court, for the reasons that follow, DENIED the motion as to plaintiff's sexual harassment, retaliation, breach of contract, defamation, and assault and battery claims and GRANTED the motion as to plaintiff's intentional infliction of emotional distress claim.

## I. BACKGROUND

Plaintiff is a former female executive of defendant banking institutions Bayerische and BLB ("bank defendants"). Defendant Bertolini was a vice president and treasurer of Bayerische and had the responsibility of overseeing the registration of BLB as a securities broker/dealer. Defendant John Warden was a non-managerial employee of Bayerische and BLB in the computer department. Defendant von Stuelpnagel was executive vice president of Bayerische and a manager of BLB.

On April 10, 1998, plaintiff entered into an employment contract with bank defendants and began work on May 1, 1998. She was made a vice-president of Bayerische and president of BLB. Prior to the time when plaintiff was hired, BLB had been incorporated as a wholly-owned subsidiary of Bayerische but had not been registered to sell securities by any federal agency or the National Association of Securities Dealers ("NASD"). Plaintiff's primary responsibility was to make the required government filings for the registration of BLB as an in-house securities broker for Bayerische.

Plaintiff testified that soon after she began working at BLB, she was subjected to hostile and degrading remarks and threats over a four-week period and that she was fired after she complained about these remarks. Plaintiff testified that Bertolini would frequently inquire about plaintiff's past sexual relationships and dating practices. On one occasion, Bertolini allegedly told plaintiff that, "you have to be a whore to keep your job," and suggested that she

sleep with the President of Bayerische to ensure her continued employment. Bertolini also allegedly told plaintiff that she was a "thick headed Irish woman who has a problem getting along with men," that "it is important to have a penis whether it is hard or soft," and that he would derive "extreme pleasure in pulling [plaintiff's] hair out, one strand at a time." Plaintiff also testified that she did not receive the required support from Bertolini in getting BLB registered. In addition, plaintiff testified that she was never provided with business cards, stationary, an office, or other support services commonly provided to male executives.

On June 3, 1998, plaintiff reported Bertolini's remarks to Bayerische's general counsel. The next day, plaintiff has testified that John Warden heatedly stormed into her office and jabbed her with his finger and physically pushed and shoved her against her office door. Allegedly this was done at the direction of Bertolini. The following day, June 5, 1998, plaintiff received a memorandum from von Stuelpnagel that accused her of, among other things, assaulting Warden and abusing Bertolini. On June 8 and 9, 1998, plaintiff met with von Stuelpnagel, who interrogated her about her alleged conduct, but refused to discuss plaintiff's complaints of sexual harassment. Plaintiff testified that defendants never conducted any investigation into her complaints of sexual harassment. On June 11, 1998, plaintiff's employment was terminated. Plaintiff was not provided with the continuation salary mentioned in the addendum to plaintiff's letter of employment.

## II. DISCUSSION

Defendants seek judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. Defendants argue that the evidence plaintiff has presented at trial does not provide a "legally sufficient evidentiary basis for a reasonable jury to find for [plaintiff]" on her claims of (A) sexual harassment, (B) retaliation, (C) breach of contract, (D) defamation, (E) assault and battery, and (F) intentional infliction of emotional distress. *See* FED. R. CIV. P. 50(a)(1).

### A. Sexual Harassment

■ Defendants argue for judgment as a matter of law on plaintiff's sexual harassment claims under Title VII and New York state and city law. This court finds that plaintiff has presented sufficient evidence at trial from which a reasonable jury could find that defendants' conduct constituted sexual harassment and from which the jury could also find that defendants' failed to investigate plaintiff's claims of sexual harassment.

### B. Retaliation

■ Defendants argue for judgment as a matter of law on plaintiff's retaliation claims under Title VII and New York state and city law. This court finds that plaintiff has presented sufficient evidence at trial from which a reasonable jury could find that defendants responded to plaintiff's complaints of sexual harassment by trumping up charges of abuse against plaintiff and by investigating plaintiff for her conduct and refusing to investigate plaintiff's claims against Bertolini and Warden.

### C. Breach of Contract Claim

Defendants argue for judgment as a matter of law on plaintiff's breach of contract claim. Defendants assert that (1) plaintiff fails to state a claim for breach of contract, (2) the breach of contract claim and the tort claims alleged rely on the same facts and that therefore the breach of contract claim should be precluded, and

(3) plaintiff is barred from pursuing her contract claim because of her misrepresentations regarding her employment background.

### 1. Failure to Make. Out of Prima Facie Case of Breach of Contract

■ Defendants argue that plaintiff failed to establish a prima facie case of breach of contract based on plaintiff's April 9, 1998 letter of employment and the addendum to that letter. Plaintiff's two-page letter of employment stated that plaintiff would be a vice-president of Bayerische, she would be an at-will employee and that during her first six weeks of orientation she could be terminated without notice. However, the addendum to the letter of employment stated that if the bank "decided not to pursue the establishing of BLB ... or to dissolve it within a twelve month period commencing May 1, 1998," plaintiff would be entitled to the remainder of her first year's salary. The addendum also set out that "upon the establishment" of BLB, plaintiff would be president of BLB and (1) plaintiff's BLB letter of employment would become invalid; (2) her salary would be $120,000 with bonus; and (3) she could only be terminated for cause.

Plaintiff's position is that the defendant banks breached the addendum to the letter of employment because she did not receive continuation salary as specified in the addendum and was fired without cause, the only ground for termination. Plaintiff testified that the parties agreed that the addendum would be the only contract between the parties superceding the two-page letter of employment. Defendants argue that no breach occurred because bank defendants did not dissolve or decide not to pursue the BLB project. The representatives of the bank defendants testified that BLB still exists as a limited liability corporation, and while subsequent incidents caused the project to be put on hold, the banks have not abandoned the idea of setting up BLB as a § 4(c)(8) subsidiary or some other operational entity.

This court finds that plaintiff has presented sufficient evidence at trial from which a reasonable jury could find that bank defendants decided not to pursue or to dissolve BLB within twelve months of May 1, 1998 and therefore breached plaintiff's employment contract.

### 2. Breach of Contract and Tort Claims Based on Same Facts

Defendants argue that plaintiff cannot allege a claim for breach of contract when the breach of contract claim arises from the same set of facts that constitute plaintiff's tort claims.

■■ As a general rule, a "breach of contract claim is *not* actionable in tort in the absence of special additional allegations of wrongdoing which amount to 'a breach of a duty distinct from, or in addition to, the breach of contract.'" *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 725 F.Supp. 656, 662 (S.D.N.Y.1989) (*quoting North Shore Bottling Co. v. C. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 179, 292 N.Y.S.2d 86, 239 N.E.2d 189 (N.Y.1968)) (emphasis in original). "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.... This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Clark–Fitzpatrick v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (N.Y.1987) (citations omitted). Therefore, the fact that the same facts

serve as the basis of both tort and contract claims can be of no moment. *See, e.g., Supra USA Inc. v. Samsung Electronics Co., Ltd.,* No. 85 Civ. 9696, 1987 WL 19953, at *2 (S.D.N.Y. Nov. 10, 1987); *Rodin Properties–Shore Mall, N.V. v. Ullman,* 264 A.D.2d 367, 694 N.Y.S.2d 374 (N.Y.App.Div.1999).

■ This court finds that in this case plaintiff may go forward with her breach of contract claim and her tort claims.[1] Although the breach of contract claim is based upon the same facts underlying plaintiff's tort claims, the breach of contract claim also rests on a theory, independent of plaintiff's tort claims, that the addendum was breached when defendants put aside the BLB project, concocted a for-cause reason for terminating plaintiff, and failed to provide plaintiff with continuation salary. This theory is distinct from the allegations of wrongdoing underlying plaintiff's various tort claims. Therefore this court will not dismiss any of plaintiff's claims based upon the argument that the contract and tort claims rest upon the same set of facts.

### 3. Resume Fraud Discovered After Plaintiff Was Hired

■ After plaintiff was terminated, defendants discovered what they claim was resume fraud on the part of the plaintiff. In her employment application, plaintiff listed the reason for leaving prior employment with the firm M.J. Whitman as "consultant." Defendants claim that the evidence shows that plaintiff had been fired from that employment for abusive conduct and that plaintiff had been terminated from at least two other places of employment, J.B. Were & Company and E.D. & F. Man, Inc. under contentious circum-

stances. J.B. Were & Company's SEC U–5 form stated that plaintiff had been terminated for "episodes of abusive language and behavior." BLB's employment application requires that applicants list all their places of employment for the last ten years. Plaintiff did not list J.B. Were or E.D. & F. Man in her application, even though she had been employed by both these firms in the 1990s. However, these firms were, in fact, listed on plaintiff's resume.

Defendants argue that the banks would never have hired plaintiff if they knew of her misrepresentations on her resume, which the banks discovered during their discovery period before trial. Defendants argue that after-acquired evidence of resume fraud provides the employer with a complete defense to a breach of contract claim. *See Crawford Rehab. Serv., Inc. v. Weissman,* 938 P.2d 540 (Colo.1997) (*en banc*) ("An employer can rely on after-acquired evidence of resume fraud as a complete defense only if it can prove that the employee undermined the very basis upon which he or she was hired.").

Defendants state that the Supreme Court's decision in *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) does not dictate a different result. In *McKennon,* the Court held that after-acquired evidence is not a bar to liability in a discrimination case. However, numerous courts have held that *McKennon* does not apply to employment breach of contract cases, since breach of contract cases do not directly affect public policy. *See Kerns Inc. v. The Wella Corp.,* 114 F.3d 566 (6th Cir.1997) (court applying New York law held that *McKennon* is not applicable to a

---

1. For other reasons, discussed below, plaintiff may not go forward with her tort claim for intentional infliction of emotional distress.

breach of contract claim and the New York courts use after-acquired evidence to bar a contract claim).

■ Under New York law, "an employer has a complete defense only when it can prove '[f]lagrant acts of dishonesty ... which *seriously* affect the master's interest, *continued* during the service ...'" *Bompane v. Enzolabs, Inc.,* 160 Misc.2d 315, 608 N.Y.S.2d 989, 993 (N.Y.Sup.Ct. 1994) (*quoting Pictorial Films v. Salzburg,* 106 N.Y.S.2d 626, 630 (N.Y.Sup.Ct.1951) (emphasis in original)).

Defendants submit that plaintiff's application for employment and paragraph 4 of her employment letter explicitly state that any misrepresentations made by plaintiff regarding her employment background would be grounds for immediate termination. Defendants state that it is undisputed that plaintiff would not have been offered employment had defendants been aware of her misrepresentations on her resume.

Plaintiff testified that she did not make misrepresentations and did not intend to defraud defendants into hiring her.

This court denied defendants' motion as to this claim because there is sufficient evidence from which a reasonable jury could find that plaintiff did not make misrepresentations, or that, even if she did, those misrepresentations would not have been material to defendants' decision to hire or fire plaintiff.

### D. Defamation

■ Defendants argue that plaintiff's defamation claim is barred by qualified privilege and that although this privilege can be overcome by a showing that defendants acted with malice, plaintiff has produced no evidence of malice other than her own assertion that defendants acted with malice.

This court finds that plaintiff has presented sufficient evidence from which a reasonable jury could find that defendants acted with malice when they published von Stuelpnagel's June 5, 1998 memorandum.

### E. Assault and Battery

■ Defendants argue that plaintiff's assault and battery claims against Warden and the bank defendants should be dismissed as a matter of law. Defendants assert that the evidence presented does not sufficiently demonstrate that Warden assaulted and battered plaintiff. Furthermore, defendants assert that even if defendant Warden did commit assault and battery, his actions should not be imputed to the bank defendants because the actions were outside the scope of his employment and done with a purpose foreign to the bank defendants' interest. Therefore, defendants argue that plaintiffs' claims against the bank defendants are barred by the New York Workers' Compensation Law. *See* N.Y. Work. Comp. law § 29; *Branch v. Sony Music Entertainment, Inc.,* 1999 WL 20866, at *4, 1999 U.S. Dist. LEXIS 354, at *9 (S.D.N.Y.1999) ("While an act may be intentionally committed by the perpetrator who worked for an employer, unless it was perpetrated at the employer's direction or instigation, the exemption from the Workers' Compensation law is inapplicable.").

Plaintiff asserts that bank defendants are liable under respondeat superior for Warden's assault, because Warden acted at the direction or instigation of defendant Bertolini. Plaintiff testified that on the morning of the alleged assault and battery, plaintiff telephoned Bertolini to seek assistance with computer problems. Bertolini responded that he would "take care of it." Ten minutes later, plaintiff testified that Warden stormed into her office and assaulted and battered her.

This court concludes that plaintiff has presented sufficient evidence for a reasonable jury to find that Warden assaulted and battered her and did so at the direction of Bertolini.

### F. Intentional Infliction of Emotional Distress Claim

■ In order to set forth the cause of action for intentional infliction of emotional distress ("IIED") under New York law, plaintiff must prove: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress. *See Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993).

■ This court agrees with defendants that plaintiff has not established a claim for intentional infliction of emotional distress because the alleged conduct is not extreme and outrageous as a matter of law. *See Ponticelli v. Zurich American Ins. Group,* 16 F.Supp.2d 414, 440–41 (S.D.N.Y.1998) ("In the sexual harassment context, it appears that for an IIED claim to survive a summary judgment motion, sexual battery should be alleged."). The standard in New York for extreme and outrageous conduct is incredibly high. *See Pepe v. Maklansky,* 67 F.Supp.2d 186, 187 (S.D.N.Y.1999) ("For example, a New York appellate court found that while " 'a hard slap on [plaintiff's] backside,' during an outburst of rage by the individual defendant" stated a cause of action for assault and battery, it fell short of "the rigorous

standard of outrageous conduct necessary to maintain a cause of action for intentional infliction of emotional distress.") (*quoting Jaffe v. National League for Nursing,* 222 A.D.2d 233, 635 N.Y.S.2d 9, 10 (N.Y.App.Div.1995)).

Although sexual harassment can give rise to a claim for intentional infliction of emotional distress,[2] this court agrees that on the evidence presented by plaintiff, the standard of extreme and outrageous conduct necessary for an intentional infliction of emotional distress claim has not been shown as a matter of law. *See Ponticelli v. Zurich Am. Ins. Group,* 16 F.Supp.2d at 441 (stating, of behavior similar to that alleged in this case, that: "This conduct, though undoubtedly unprofessional, distasteful, and improper, does not rise to the level of extreme and outrageous behavior required for an IIED claim in New York."). Defendants' motion as to this claim is therefore granted and this claim is dismissed.

### III. CONCLUSION

This court DENIES defendants' motion for judgment as a matter of law as to plaintiff's sexual harassment, retaliation, breach of contract, defamation, and assault and battery claims because the evidence plaintiff has presented at trial provides a legally sufficient evidentiary basis for a reasonable jury to find for plaintiff on these claims.

This court also GRANTS defendants' motion for judgment as a matter of law as to plaintiff's intentional infliction of emotional distress claim because, on the evidence presented, a reasonable jury could

---

**2.** *See Ponticelli v. Zurich Am. Ins. Group,* 16 F.Supp.2d 414, 440–41 (S.D.N.Y.1998) (stating that although standard for an IIED claim is extremely difficult to satisfy, sexual harassment context can give rise to such claim); *Funk v. F & K Supply, Inc.,* 43 F.Supp.2d 205

(N.D.N.Y.1999) (stating that "the majority view of the New York courts, along with nearly every federal court, is that sexual harassment can give rise to a claim under New York law for IIED").

not find that defendants' conduct meets the test for extreme and outrageous conduct under New York law. Plaintiff's intentional infliction of emotional distress claim is therefore DISMISSED.

SO ORDERED.

### MEMORANDUM OPINION

Defendants in the above-captioned matter now on trial have requested a ruling of law as to whether plaintiff's employment contract with defendant banks consisted of the two-page April 9, 1998 letter of employment plus the one-page addendum or whether the one-page addendum constituted the entire contract between the parties.

Plaintiff's April 9, 1998 letter of employment stated that plaintiff would be a vice-president of Bayerische, she would be an at-will employee and that during her first six weeks of orientation she could be terminated without notice. The addendum stated that if the bank "decided not to pursue the establishing of BLB ... or to dissolve it within a twelve month period commencing May 1, 1998," plaintiff would be entitled to the remainder of her first year's salary. The addendum also set out that "upon the establishment" of BLB, plaintiff would be president of BLB and (1) plaintiff's BLB letter of employment would become invalid; (2) her salary would be $120,000 with bonus; and (3) she could only be terminated for cause.

Plaintiff has argued that the addendum states that it supercedes the employment letter "upon the establishment of BLB." Plaintiff argues that BLB was incorporated in the fall of 1997, before plaintiff began working for defendants in May 1998, and therefore the addendum supercedes the letter of employment.

This court disagrees with plaintiff's reading of the addendum. Although BLB was already incorporated in 1997, the language of the addendum would not make sense if establishment meant incorporation since the language looks forward to a time when BLB would be established. The addendum is dated April 9, 1998. Clearly at that time, none of the parties thought BLB was established. Rather, defendants' interpretation that established meant licensed as a broker-dealer—which had yet to occur—is more in keeping with the future-looking language of the addendum. Because BLB did not become established during plaintiff's six weeks of employment, the addendum did not supercede the letter of employment and did not become the sole binding contract between the parties. Therefore, this court rules that the contract between plaintiff and the bank defendants was a three-page document which included the two-page letter of employment and the one-page addendum.

### MEMORANDUM OPINION AND ORDER

In accordance with this court's Memorandum Opinion in the above-captioned matter dated May 30, 2001, this court now concludes that plaintiff has failed to establish her breach of contract claim against defendants as a matter of law. Construction of the contract is a question of law for the court. See Newman v. Commissioner of Internal Revenue, 902 F.2d 159, 162 (2d Cir.1990).

The conditions of employment set forth in the addendum to plaintiff's April 9, 1998 letter of employment do not, under the terms of the addendum, come into effect until the "establishment" of BLB. This court has already ruled that the term "establishment" in the addendum means licensed as a broker-dealer. Therefore, because BLB was never licensed as a broker-dealer, BLB was never established, and the terms set forth in the addendum never became applicable to plaintiff's employ-

ment. This being the case, at the time plaintiff was fired, she was an at-will employee under the letter of employment and had no claim to any continuation salary.

This court therefore rules that, as a matter of law, plaintiff has failed to show a breach of contract by defendants. Plaintiff's breach of contract claim is therefore DISMISSED.

SO ORDERED.