J. Craig **MARLEY**, Plaintiff,

v.

Juliette **IBELLI** and Cordelia Rose, Defendants.

No. 01 CIV. 2434(NRB).

United States District Court, S.D. New York.

Oct. 31, 2001.

National Design Museum ("Cooper–Hewitt"), brought this suit against Juliette Ibelli ("Ibelli") and Cordelia Rose ("Rose"), his former co-workers, in the Supreme Court of New York. In his complaint, he alleges the four common law tort claims of assault, battery, intentional infliction of emotional distress, and tortious interference with a contract. Based upon Ibelli's and Rose's employment at the Cooper–Hewitt, which is a part of the Smithsonian Institution ("Smithsonian"), defendants removed pursuant to 28 U.S.C. § 1442(a)(1), which allows for removal of suits against United States agencies, officers, and persons acting under such officers, as well as under the Federal Tort Claims Act, 28 U.S.C. § 2679(d).

Currently before the Court is defendants' motion to substitute the United States as the defendant and to dismiss on grounds that plaintiff's claims are barred under the Federal Tort Claims Act ("FTCA"), precluded by the Federal Employment Compensation Act ("FECA"), and preempted by Title VII.[1] Furthermore, as to plaintiffs' claims for intentional infliction of emotional distress and tortious interference with a contract, defendants assert that these claims should be dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. Pro. 12(b)(6). Plaintiff cross moves to remand the case to New York Supreme Court, and alternatively, if the United States is substituted as defendant, to amend his complaint to assert further constitutional and contractual claims.[2] *See* D'Emilia Aff. ¶ 7–8.

For the reasons stated below, defendants' motion to substitute the United

Robert F. D'Amelia, New York City, for Plaintiff.

Andrew D. O'Toole, United States Attorney, Southern District of New York, New York City, for Defendants.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Plaintiff, J. Craig Marley ("Marley"), a former employee of the Cooper–Hewitt

---

1. Defendants originally also moved to dismiss for insufficiency of service of process. Since the Assistant United States Attorney has withdrawn that contention, we will not address this issue. *See* Tr. of Oral Argument at 2–3.

2. Additionally, plaintiff moves for reconsideration of his recusal motion, which was denied by the Court at oral argument on October 4, 2001. *See* Tr. of Oral Argument at 3–7. A judge may not preside over a case where her

States as the named defendant and to dismiss the action is granted. Plaintiff's cross motion to remand the case and to amend his complaint is denied.

## BACKGROUND

Plaintiff Marley was hired by the Smithsonian Institution in January, 1997, to work as a Museum Technician in the Office of the Registrar of the Cooper–Hewitt. *See* Am. Compl. ¶ 5. Defendant Ibelli worked in this same office as an Associate Registrar, and defendant Rose was the direct supervisor of both Marley and Ibelli. *See id.* The desks in the office in which the parties worked were arranged in such a way that when Ibelli entered and exited the room, she passed directly behind Marley's chair. *See id.* at ¶ 8.

Plaintiff's complaint alleges that for a period of time prior to July, 2000, Ibelli was hostile towards Marley, made inappropriate remarks about gay men, treated effeminate men differently,[3] and started informing Marley about job opportunities at other museums. *See id.* at ¶ 10. Mar-ley alleges that in the Spring of 2000, he was "hit on the side or back of his head and shoulders by clothing worn by Ibelli that she had draped across her shoulders as she walked behind Marley while he was working from his chair." *Id.* at ¶ 11. After this "assault by sweater" had occurred about seven times, Marley states that on July 11, 2000, he approached Ibelli about this unwanted physical contact, and she largely denied it. *See id.* at ¶ 12. Later, Marley claims that Rose reprimanded Marley for complaining to Ibelli and claiming that he had been hit in the office. *See id.*

Marley alleges that subsequent to these attacks and through the Fall of 2000, Ibelli's hostile attitude towards Marley escalated, his job performance was criticized by Rose, and Rose notified him that if he made any further complaints, he would be terminated. Marley describes Ibelli's conduct at the beginning of October as "hostile, combative, and threatening," stating that she slammed the office door multiple times, slammed heavy books down on the

---

"impartiality might reasonably be questioned," or where she "has personal bias or prejudice concerning a party." 28 U.S.C. § 455(a) and (b)(1). Such determinations are in the first instance addressed by the judge asked to recuse herself. *See United States v. Yousef,* 1999 WL 714103, *2 (S.D.N.Y. Sept. 19, 1999) (denying motion for recusal under § 455(a)). Furthermore, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *See Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Any conclusions the Court has drawn in this case have been influenced solely by the applicable law, the pleadings, and the parties' submissions, and no external factors or influences. Accordingly, plaintiff's motion for reconsideration is denied.

Furthermore, plaintiff moves for sanctions against the Assistant United States Attorney and declarant John K. Lapiana based on the allegedly perjurious and evasive nature of their submissions in connection with this case. We explored each basis for such a motion at oral argument and found plaintiff's allegations to be unwarranted and wanting. *See* Tr. of Oral Argument at 15–26. Since there is no evidence of such conduct, the Court will not address this aspect of plaintiff's cross motion further except to say that it is denied as unfounded. *Cf. Patsy's Brand Inc. v. IOB Realty Inc.,* 2001 WL 1154669, *2 (S.D.N.Y. October 1, 2001) (sanctioning attorney in part for bringing inappropriate and unsupported motion for sanctions against the opposing attorney).

3. Specifically, Marley states, "Marley also observed the manner in which Ibelli treated a male effeminate visitor to the office. Marley is an effeminate male." *See* Am. Compl. ¶ 10.

countertop near Marley, and "whisked behind Marley's desk in a threatening manner." *See id.* at ¶ 18–19. When Marley returned from a vacation at the end of October, he found that his computer workstation had been rearranged such that Rose's workstation was immediately to the left of Marley's. *See id.* at ¶ 21. Subsequently, Marley alleges that, "on an intermittent basis Rose would sit at the new workstation ... and move closer and closer to [Marley] during the course of the day until she came up on top of him and touched him with her right hand and/or arm or come up on top of him for the purpose of touching him by brushing her right hand and/or arm against his body." *Id.* at ¶ 22. Multiple grievances were written by Marley during this period about these alleged occurrences, and Rose referred Marley for counseling. *See* Am. Compl. Attach. Ex. A, B, C, D, and E.

Office tensions seem to have peaked in early December, when Marley alleges that Rose chased after Marley as he left the Main Office to go to the restroom. Marley claims that Rose stood outside the restroom shouting at Marley in a threatening manner, causing Marley to fear for his safety and remain in the restroom for several minutes. *See* Am. Compl. ¶ 28. On December 14, 2001, Rose had Marley removed from the office pending the outcome of her proposal to terminate his employment. *See id.* at ¶ 31. Marley's employment was officially terminated at the end of January, 2001. *See id.*

■ After his termination, plaintiff filed a formal complaint with the Smithsonian's Office of Equal Employment and Minority

Affairs. *See* Marley Aff. Attach. Ex. G (referencing this complaint); Mem. of Law in Supp. of Def.'s Mot. to Substitute the United States and to Dismiss the Am. Compl. at 7–8. In this complaint, plaintiff alleges that he was discriminated against because of his sex and sexual orientation, and was discriminated against based on a disability or perceived disability that he is an overly sensitive person. *See id.* Marley filed this lawsuit in February, 2001, against Ibelli and Rose personally for assault, battery, intentional infliction of emotional distress, and tortious interference with contractual relations. Since filing this action, pursuant to the Federal Employment Compensation Act, plaintiff has also submitted a Notice of Occupational Disease and Claim for Compensation ("FECA claim"). Plaintiff has also notified the Smithsonian of his claim under the Federal Tort Claims Act ("FTCA claim"). *See* Pl.'s Opp'n Attach. Ex. D.[4] We turn now to the issues currently before this court, namely whether the United States should be substituted as the defendant, whether defendant's motion to dismiss should be granted, and whether plaintiff's cross motion to remand to state court or, alternatively, to amend his complaint, should be granted.

## DISCUSSION

**1. Appropriateness of Removal and the Applicability of the Federal Tort Claims Act**

■ Defendants removed this action from the state court under the federal removal statute, 28 U.S.C. §§ 1441(a), 1442(a), and 1446(a), as well as under the

---

4. While the existence of these myriad complaints that have been filed by the plaintiff is ultimately not dispositive in this decision, it should be noted that a district court may rely on matters of public record or those incorporated by reference into the complaint in de-

ciding a motion to dismiss for failure to state a claim under 12(b)(6). *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir.1998); *Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.*, 155 F.3d 59, 67 (2d Cir.1998).

FTCA, 28 U.S.C. § 2679(d)(2), following certification from United States Attorney Mary Jo White that the defendants were sued for alleged acts taken within the scope of their federal employment. *See* Certification of United States Attorney Mary Jo White, dated May 22, 2001. Since the issues raised by removal under the federal removal statute and the FTCA are substantially the same, we will focus on the FTCA because it provides the relevant substantive law.[5]

■ Pursuant to the FTCA as amended by the Westfall Act, a tort action filed against federal employees is deemed an action against the United States and the United States is to be substituted as the defendant when the Attorney General certifies that the defendant employee was acting within the scope of his employment when the claim arose. 28 U.S.C. § 2679(d)(1); *McHugh v. University of Vermont*, 966 F.2d 67,70 (2d Cir.1992). This certification is reviewable *de novo* by the district court, and such review is triggered by opposition from the plaintiff "alleg[ing] with particularity facts relevant to the scope-of-employment issue" as read in the light most favorable to plaintiff. *McHugh*, 966 F.2d at 74.

In this case, defendants have submitted a certification by the United States Attorney for the Southern District of New York that Ibelli and Rose were acting within the scope of their employment with the Smithsonian Institution at the time of the incidents alleged in plaintiff's complaint. *See* Certification of United States Attorney Mary Jo White, dated May 22, 2001. In opposition, plaintiff Marley makes a few arguments. In opposition to the motion to substitute the United States and in support of his motion to remand to state court, Marley first argues that the Smithsonian is not a federal agency within the meaning of the FTCA. Second, Marley argues that even if the Smithsonian was a federal agency, because defendant Rose is paid out of Smithsonian funds held in private trust rather than out of federal appropriations, she is not a federal employee within the meaning of the FTCA.[6] Third, plaintiff argues that defendants' acts as alleged in the complaint cannot be considered within the scope of employment under § 2679(d)(1).

■ Plaintiff's argument that the Smithsonian is not a federal agency for the purposes of the Federal Tort Claims Act ("FTCA") is unpersuasive. As a trust instrumentality of the United States, *see* 20 U.S.C. §§ 41 *et seq.*, the Smithsonian is clearly a federal entity, despite the existence of a private funding source.[7] For

---

5. Under 28 U.S.C. § 1442(a)(1), a civil action commenced in state court against the United States, any agency of the United States, any officer of the United States, or any person acting under such an officer may be removed to federal district court where that individual is sued "in an official or individual capacity for any act under color of such office." Plaintiff argues that the Smithsonian does not fall within the language of the federal removal statute. This argument is clearly contrary to the language of the statute and the case law. *See, e.g., Madison Restoration Corp. v. Smithsonian Institute et al.*, 985 F.Supp. 434, 436 (S.D.N.Y.1997) (explaining that Smithsonian removed contract claim to federal court pursuant to §§ 1441(a), 1446).

6. Funds for the Smithsonian Institution come from two sources, federal appropriations and the Smithsonian's original trust endowment. During his employment, plaintiff was paid out of the trust fund. Defendant Rose is paid out of the trust fund and defendant Ibelli is paid from federal appropriations. *See* Def.'s Mot. at 10; *see also Misra v. Smithsonian Astrophsical Observatory*, 248 F.3d 37, 38 (1st Cir. 2001) (explaining the Smithsonian's system of funding).

7. *See Madison Restoration Corp. v. Smithsonian Institute*, 985 F.Supp. 434, 437 (S.D.N.Y. 1997) (describing how the Smithsonian was created and how it is overseen by the Vice President, the Chief Justice of the Supreme

the purposes of the FTCA, which defines "federal agency" in the broadest terms,[8] the Smithsonian is considered an "independent establishment of the United States." *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 566 F.2d 289, 296 n. 2, 3. (D.C.Cir.1977) (en banc) (explaining the partially private funding system of the Smithsonian, and holding that nonetheless the Smithsonian is an "independent establishment of the United States" under the FTCA and that its employees are employees of the government); *Makarova v. United States,* 201 F.3d 110, 112–14 (2d Cir.2000) (holding that because the Kennedy Center, which is owned by the Smithsonian, is an entity of the United States, ballerina's personal injury claim was barred by the FTCA).

 Furthermore, it is irrelevant that defendant Rose's employment with the Smithsonian is funded through a private trust. *See supra* at 304 n. 6. The Smithsonian is still her employer, and the Smithsonian is immune from suit except in the very limited circumstances where Congress has seen fit to waive this immunity. *See* Decl. of Smithsonian Assistant General Counsel John K. Lapiana ¶ 34 (stating that Rose is a Smithsonian employee); *cf. Misra v. Smithsonian Astrophsical Observatory,* 248 F.3d 37, 40 (1st Cir.2001) (holding plaintiff's status as trust fund employee to be irrelevant because the focal issue of sovereign immunity is the nature of the entity being sued).

 Plaintiff's argument that the FTCA is inapplicable here because defendants were not acting within the scope of their employment is similarly unavailing. Under New York law, which governs the

scope of employment determination, *see McHugh,* 966 F.2d at 75, an employee's act is within the scope of the employment if it "was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Riviello v. Waldron,* 47 N.Y.2d 297, 302, 418 N.Y.S.2d 300, 391 N.E.2d 1278 (1979). Five factors are helpful in analyzing whether an employee's actions were taken in the scope of her employment: (1) the connection between the time, place, and occasion for the act; (2) the history of the relationship between the employer and the employee as spelled out in actual practice; (3) whether the act is one which is commonly done by such an employee; (4) the extent of the departure from normal methods of performance; and (5) whether the specific act was one that the employer could reasonably have anticipated. *Id.* at 303, 418 N.Y.S.2d 300, 391 N.E.2d 1278. These factors overwhelmingly indicate that the acts attributed to Ibelli and Rose in plaintiff's complaint occurred within the scope of their employment. The alleged acts occurred during work hours, within the work environment, and between co-workers. Plaintiff has even suggested that Ibelli may have been motivated by jealousy over "recognition and accolades" Marley received for his job performance, and that Rose may have been motivated by a desire to cover up her practice of working out of her New Mexico home. *See* Am. Compl. ¶¶ 11, 16. The last three factors, which focus on the kinds of behavior typically found in the workplace, also indicate that defendants were acting within the scope of their employment. The acts alleged in Marley's complaint depict an office with a tight seating arrangement, in

---

Court, six members of Congress, and nine other citizens selected by joint resolution of Congress).

**8.** In relevant part, § 2671 defines "federal agency" to include "the executive departments, the judicial and legislative branches,

the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States." 28 U.S.C. § 2671.

which employees must pass behind co-workers' desks or sit immediately next to each other at computer workstations.[9] As argued by defendants, it is inevitable that co-workers "will come into physical contact with one another from time to time whether through clumsiness, negligence, or intent."[10] *See* Reply Mem. of Law in Further Support of Def.'s Mot. at 8.

The crux of Marley's argument that the acts alleged in plaintiff's complaint cannot fall within the scope of defendants' employment rests on the generally correct assertion that the deliberate perpetration of what plaintiff characterizes as "bias or hate crimes" in a work environment will not be found within the scope of the employment.[11] *See, e.g., Griffin v. William M. Mercer, Inc.*, 1998 WL 1050968, *9–10 (N.Y.Sup.Ct. May 25, 1998) (dismissing assault, battery, and intentional infliction of emotional distress claims and stating that "cases in which plaintiffs seek to hold employers vicariously liable for sexual assaults committed by one of their employees are regularly dismissed in [New York]"). However, while plaintiff would like to characterize his claim as a discrimination claim for the purposes of the scope of the employment inquiry, he chose the litigation strategy of pleading only common law tort claims. As explained above, given the particular facts of this case rather than plaintiff's current characterization of these facts, there is no question that the alleged acts fall within the scope of defendants' employment. *See, e.g., Margaret S. Inglis v. Dundee Central School District Board of Education*, 687 N.Y.S.2d 866, 180 Misc.2d 156 (N.Y.Sup.Ct.1999) (holding teacher's act of slapping a student within the scope of employment).

## 2. The Federal Tort Claims Act Bars Plaintiff's Claims for Assault, Battery and Interference with Contractual Relations

▆ Defendants further argue that since Rose and Ibelli are federal employ-

---

9. In fact, in response to Marley's complaints, an OSHA inspection resulted in a Notice of Corrective Action ordering the Cooper–Hewitt to take corrective steps to prevent Marley's chair from blocking a fire exit. OSHA's inspection revealed that the passageway leading to the exit door was only twenty-one inches in width. *See* Marley Aff. Attach. Ex. I.

10. Assuming plaintiff could pursue his claims that the alleged unwanted physical contact occurred due to discrimination, and that he was treated differently by Rose and Ibelli because he is "an effeminate male," under Title VII, his claims would be analyzed under the hostile work environment rubric. In that area of the law, a claim of sexual harassment must be so pervasive that it alters the conditions of the victim's employment and creates an abusive working environment. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (setting forth list of factors that are relevant in making this determination, including the frequency, severity, and physical nature of the conduct, as well as interference with job performance and psychological inju-

ry.). In this context, the Second Circuit has held that "[t]he incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief." *Kotcher v. Rosa and Sullivan Appliance Center, Inc.*, 957 F.2d 59, 62 (2d Cir.1992). Employing a similar analysis, the allegations pleaded in Marley's complaint, even assuming they could be pursued under Title VII, simply do not establish a claim of sexual harassment rising to this level of pervasiveness or abusiveness.

11. Under New York Penal Law § 485.05, a hate crime is committed when a specified offense is carried out against a person selected "in whole or in substantial part because of a belief or perception regarding the . . . sexual orientation of a person, regardless of whether the perception is correct." Specified offenses within this classification include assault, menacing, manslaughter, murder, sexual abuse, etc. It should be noted that Marley's characterization of plaintiff's acts as "hate crimes" is unsupported by any evidence that any criminal complaint was filed, or even that the acts alleged meet these required elements of a hate crime under the Penal Law.

ees acting in the scope of their employment, and are therefore covered by the FTCA, plaintiff may not pursue his claims of assault, battery, and interference with contractual rights. The FTCA is a limited waiver of sovereign immunity. One exception to the sovereign immunity waiver is 28 U.S.C. § 2680(h), commonly referred to as the "intentional torts exception," which operates as an express bar to any claim "arising out of assault, battery, ... or interference with contract rights." Plaintiff's claims of assault, battery, and tortious interference with contractual rights (economic advantage) fall squarely within the express language of the statute. As such, this Court is without jurisdiction to hear such claims and they are dismissed. *See Makarova*, 201 F.3d at 113–14.

### 3. Intentional Infliction of Emotional Distress

■ Defendant's also argue that plaintiff's claim of intentional infliction of emotional distress should be dismissed for failure to state a claim as a matter of law. *See* Fed. R. Civ. Pro. 12(b)(6). The elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendants, (2) an intent to cause severe emotional distress, and (3) resulting severe emotional distress. *Mortise v. United States*, 910 F.Supp. 74, 77 (N.D.N.Y.1995) (citing *Burba v. Rochester Gas and Elec. Corp.*, 90 A.D.2d 984, 456 N.Y.S.2d 578 (4th Dept.1982)). The alleged conduct must be truly egregious to meet these required elements, and "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. American Home Prod. Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (N.Y.1983) (citing Restatement 2d of Torts).

■ The conduct alleged in plaintiff's complaint, even regarded in the light most favorable to plaintiff and without challenging the sincerity of the plaintiff's distress, simply does not meet this standard. Plaintiff's description of unwanted physical contact in his work environment does not rise to the level of outrageous contact required under the law. *See, e.g., Baliva v. State Farm Mutual Automobile Ins. Co.*, 730 N.Y.S.2d 655 (N.Y.A.D. 4th Dept.2001) (affirming trial court's dismissal of intentional infliction of emotional distress claim in sexual harassment case in which employer touched plaintiff's shoulder several times, screamed at plaintiff about her work, invaded plaintiff's personal space, and made a comment about sexual orientation); *Carroll v. Bayerische Landesbank*, 150 F.Supp.2d 531, 538 (S.D.N.Y.2001) (dismissing intentional infliction of emotional distress claim where plaintiff had alleged multiple instances of sexual harassment for failure to plead sufficiently outrageous conduct). Thus, plaintiff's claim for intentional infliction of emotional distress is dismissed for failure to state a claim as a matter of law.

### 4. Plaintiff's Motion to Amend the Amended Complaint

■ Finally, in the event that the United States is substituted as the defendant, plaintiff moves to amend the Amended Complaint to assert what he loosely describes as contractual and *"Bivens*-type claims." *See* D'Emilia Aff. ¶ 7–8; *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (holding that constitutional claims for damages may be asserted against federal officials). The District Court has wide discretion on whether to grant leave to amend. *Ruffolo*

*v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993). While required to grant leave "freely ... when justice so requires," the Court may nonetheless deny leave to amend when it appears that granting leave to amend "is unlikely to be productive." *Id.* In this particular case, there is no realistic possibility that the facts alleged in plaintiff's complaint constitute grounds for a claim that plaintiff's constitutional rights have been violated. *Cf. Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (refuting the notion that "every legally cognizable injury [under state law] which may have been inflicted by a state official acting under 'color of law' establish[es] a violation of the Fourteenth Amendment"); *Easton v. Sundram*, 947 F.2d 1011, 1017 (2d Cir.1991) (dismissing constitutional claim for malicious prosecution and stating "[s]imply because New York state affords a tort of civil malicious prosecution does not transform Easton's claim into a constitutional cause of action"). Furthermore, given that plaintiff has asserted damages far in excess of $10,000, plaintiff's sole remedy for any contract claims against the United States lies within the exclusive jurisdiction of the Court of Claims. 28 U.S.C. §§ 1346(a)(2), 1491(a)(1); *see Chemung County v. Dole*, 781 F.2d 963, 967 (2d Cir.1986) (explaining statutory jurisdictional bar on contract claims in district court). For this reason, plaintiff's motion for leave to amend is denied.

### CONCLUSION

Having dismissed this case under the FTCA and for failure to state a claim as a matter of law, it is unnecessary to address defendants' other arguments that plaintiff's claim is barred for failure to exhaust administrative remedies or precluded by Title VII.

For the reasons stated in this opinion, defendants' motion to substitute the United States as the defendant and to dismiss this action is granted. Plaintiff's cross motion to remand the case to state court and for leave to amend the Amended Complaint is denied. The Clerk of the Court is respectfully directed to close this case.

**IT IS SO ORDERED.**