**Sharon DURANT, Plaintiff,**

v.

**A.C.S. STATE AND LOCAL SOLUTIONS INC., a/k/a E–Z Pass, et al., Defendants.**

**No. 05 CIV. 7303(CM).**

United States District Court,
S.D. New York.

Nov. 1, 2006.

Dennis Adjei Brenyah, Spring Valley, NY, for Plaintiff.

Samuel Zurik, III, The Kullman Firm, New Orleans, LA, for Defendant.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT A.C.S. STATE AND LOCAL SOLUTION'S MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

The last remaining defendant in this sexual harassment/hostile work environment case, A.C.S. State and Local Solutions, Inc., a/k/a E–Z Pass ("ACS") has moved for summary judgment dismissing plaintiff's case. The motion is granted.

Before turning to the merits, several procedural matters require brief discussion.

First, as always, the court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where a plaintiff fails to establish an essential element of her claim, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–33, 106 S.Ct. 2548 (internal quotations and citations omitted). On a motion for summary judgment, the court views the record in the light most favorable to the non-movant and resolves all ambiguities and draws all reasonable inferences against the movant. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Commn'rs,* 834 F.2d 54, 57 (2d Cir.1987).

Second, defendant's application to strike plaintiff's responsive papers on the ground that they were filed well after the deadline for filing had passed—and they were—is denied.

Third, I agree with defendant that plaintiff's Rule 56.1 Counter–Statement of material facts is woefully deficient and fails to comply with this Court's rules in the following respects: it does not contain correspondingly numbered paragraphs responding to each numbered paragraph in the statement of the moving party (in fact, it is simply a counter-statement of fact, containing no response whatsoever to defendant's Rule 56.1 statement), and the statements of "fact" asserted therein are not supported by citations to admissible evidence. Therefore, plaintiff's Rule 56.1 Statement is stricken and the assertions in Defendant's Rule 56.1 Statement (which does comport with the local rule) are accepted as undisputed.

Fourth, to the extent that plaintiff's affidavit either contradicts or supplements her deposition testimony in an effort to create a disputed issue of material fact, the affidavit must be disregarded. It is well settled in this Circuit that, "[a] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corrs.,* 84 F.3d 614, 619 (2d Cir.1996). "[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony." *Brown v. Henderson,* 257 F.3d 246, 252 (2d Cir. 2001).

At her deposition, plaintiff was quite clear that the only instances of sexual

harassment forming the basis for her lawsuit were two overtly propositioning notes that were sent to her by Terri Simeon. She so testified repeatedly. (*See* Pl. EBT at 68–70, 76–77.) To quote one example:

Q: Besides the first note in March, the second week of training, and the second note on April 3, was there any other harassing conduct by Ms. Simeon, towards you?

A: No.

(*Id.* at 69.)

In her affidavit, plaintiff adds information about other matters that she contends constituted sexual harassment. No such supplementary matter will be considered, under the rule of *Hayes* and *Brown,* cited above.

With these preliminary rulings out of the way, I turn to the undisputed facts.

**Statement of Undisputed Facts**

The following facts are undisputed. Evidence in support can be found in Defendant's Rule 56.1 Statement. The court has limited itself to facts deemed relevant, and casts them in a manner most favorable to plaintiff.

ACS has a contract with the New York State Thruway for the operation of an E–Z Pass customer service call center in Spring Valley, New York. For the most part, ACS staffs this call center with individuals who are directly employed by employment agencies, rather than with persons employed by ACS—in other words, ACS outsources the employment function.

Plaintiff Sharon Durant was hired by one of these outsourcing agencies, Distinctive Temporaries (a/k/a Employment Leasing of Greater New York LLC) ("Distinctive"). She was paid by a second temporary agency, Superior Staffing, Inc. ("Superior").[1] She was hired to be a customer service representative ("CSR"), which entailed taking phone calls from E–Z Pass customers, informing customers of their balance, and finding out how many vehicles the customer possessed. Her date of hire was March 5, 2003.

Terri Simeon is also a CSR, but she was employed directly by ACS rather than by a temporary staffing agency. At the time plaintiff was assigned to the Spring Valley E–Z Pass location, Simeon was an acting Senior CSR or acting Work Leader. Her duties included the normal duties of a CSR, supplemented by assisting CSRs with escalated calls (calls in which the customer is dissatisfied with the service provided by the CSR who originally takes the call). Simeon was also a substitute trainer, who helped train new CSRs, including plaintiff. Simeon's duties did not include monitoring CSRs, preparing or participating in evaluations of their performance or making recommendations regarding disciplinary actions, hires, or terminations. Simeon did not give plaintiff her work assignments. She did administer tests and quizzes, grade tests (raw scores only, not evaluations) and serve as a liaison between trainees and supervisors.

Plaintiff believed that Simeon was her supervisor.

At all relevant times, ACS maintained a sexual harassment policy in the Spring Valley location, which had been developed by its predecessor, Lockheed Martin. ACS did not post or promulgate the policy to employees, or at least to plaintiff.

During her training period, plaintiff heard employees making off-color jokes, but they did not offend her. She also overheard a conversation between Simeon

---

**1.** Distinctive and Superior were originally named as defendants in this action, but were dropped as parties by plaintiff some time ago.

and someone else in which Simeon talked about having sex with her boyfriend.

Simeon sent plaintiff two notes during the course of Durant's employment. The first note was sent in March. The second was given to Durant on April 3, 2003.

The first note contained what appeared to plaintiff to be a sexual proposition ("How about you and me or me you and my friend, I don't want to be rejected because of my weight.")

Plaintiff was upset by this note. She told Simeon, "Don't send me no nonsense." Although she told a co-worker about receiving the note, she did not report the note to anyone in management.

Nothing happened for several weeks thereafter. Then, on April 3, 2003, plaintiff received a second note from Simeon, which said, "Is it true that Evans was playing with your kitty when he was training you? I heard this and they said it is why Lena [sic] does not like you. How do you feel about me touching you on the down low like-when I am helping you w/ a customer? I don't know why but you fascinate me. Write back on the back so I can throw away."

Plaintiff felt humiliated and ashamed by the second note. She discussed it with several co-workers. The next day, she showed the note to Lema Anderson–Gauthier, a Work Leader, who in turn delivered the note to Amenola Amer, the supervisor at the Spring Valley facility.

Within 40 minutes after she handed the note to Anderson–Gauthier, plaintiff was moved to a different work station, one close to Amer's office. Amer told plaintiff that ACS would look into the situation and would keep Simeon away from her. Plaintiff worked for the rest of the day, and had no contact with Simeon.

Tony Brown, a management level employee of ACS, spoke with plaintiff about her complaint, as did representatives of both Superior and Distinctive. Brown also spoke with Simeon, who admitted that she had written the note, though she claimed that plaintiff welcomed it.

Simeon called plaintiff the next day and left her a phone message asking her to call. She also approached plaintiff, but did not get a chance to say anything because Amer witnessed the attempt and told Simeon to move. Simeon did move and did not speak to or touch plaintiff. She never bothered Durant again. In fact, plaintiff did not even see Simeon again until the day she left her job.

As a result of Brown's investigation, Simeon was suspended for five days. She was escorted out of the building at the beginning of her suspension. She was placed on final warning and a promotion she had been expecting was put on hold.

Plaintiff was given three days off following this incident. She testified that she appreciated the time off.

Because Simeon was worried about being fired, she did not approach plaintiff again or try to communicate with her in any way. However, according to plaintiff, on April 16, 2003, Simeon passed by Durant's cubicle going to and from the kitchen. At one point Simeon stopped at the cubicle adjacent to plaintiff's and said, "Hey," to the person sitting in that cubicle. Durant "felt" that Simeon was staring at her and was trying to address her.

Plaintiff told an ACS Work Leader named Kim about what Simeon had done. She stated that she wanted to leave the premises and asked to see Amer. Kim told her to "stay put" while she (Kim) went to find Amer. When Kim did not return after 25 minutes, plaintiff left the premises of her own volition. She never returned.

Plaintiff alleges that ACS forced her to resign from her job. She admitted that she was unhappy because Simeon was not

fired. Durant also felt that her co-workers were looking at her in the break room because of her complaint.

However, no one from ACS asked plaintiff to resign, and plaintiff testified that she did not think that ACS was trying to make her life miserable or to force her to resign.

## Discussion

### Quid Pro Quo Harassment

■ Plaintiff contends that Simeon was her supervisor and that her admitted acts of sexual harassment constitute quid pro quo harassment, for which ACS is liable. This contention fails because plaintiff does not identify any tangible employment action that was occasioned by her refusal to submit to Simeon's sexual advances. *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 603–04 (2d Cir.2006). Plaintiff admitted at her deposition that Simeon took no tangible employment action against her after giving her the notes; indeed, Durant admitted that she did not know if Simeon *could* have taken any action against her. (Pl. EBT at 32–33, 35, 51–52, 123). The undisputed facts reveal that Simeon was not in a position to take tangible employment action against plaintiff—that is, she did not evaluate plaintiff, she did not have any input into decisions to hire, fire or promote plaintiff, nor did she have any input regarding plaintiff's compensation. Moreover, there is not a shred of evidence in the record that Simeon tried to have anyone else at ACS take any adverse action against Durant.[2] There is simply no basis in the record for any claim of quid pro quo sexual harassment. (To the extent that plaintiff claims that her constructive discharge constituted the adverse employment action, see below for a discussion of why plaintiff's constructive discharge claim fails as a matter of law.)

### Hostile Work Environment

■ A plaintiff claiming hostile work environment must establish that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotations and citations omitted). Plaintiff must show that the workplace was both subjectively and objectively hostile. *Williams v. N.Y.C. Hous. Auth.*, 154 F.Supp.2d 820, 822 (S.D.N.Y. 2001). In making this determination, the court looks at " 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Id.* (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367). Single or isolated instances of misconduct do not rise to the level of pervasiveness unless, taken separately or together, they are so extraordinarily severe or sufficiently continuous and concerted as to have altered the working environment. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000).

■ Plaintiff must also establish a basis for imputing the conduct to her employer. If the conduct was committed by a co-worker, the employer is not liable un-

2. ACS argues, with some force, that Simeon was not Durant's supervisor under the test set forth by the Second Circuit in *Mack v. Otis Elevator Co.*, 326 F.3d 116, 127 (2d Cir.) *cert. denied*, 540 U.S. 1016, 124 S.Ct. 562, 157 L.Ed.2d 428 (2003). I need not reach this point, because even assuming that Simeon was a supervisor, there is no evidence in the record that she conditioned any tangible employment action on the receipt of sexual favors from Durant or that she took any tangible employment action against plaintiff, or caused someone else to do so, after her advances were rejected.

less the employer either provided no avenue for complaint or knew of the harassment and did nothing to prevent it. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir.1998), *abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). If committed by a supervisor, the employer is presumptively liable for the conduct, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), but can avoid liability by establishing that it exercised reasonable care to prevent and correct harassing behavior and that the employee did not avail herself of corrective or preventative opportunities. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). And where the employer took immediate and effective corrective action after the employee complained, the employer is not liable, even for sexual harassment committed by a supervisor. *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 154 (2d Cir. 1997).

■ Plaintiff has not adduced sufficient evidence to raise a genuine issue of fact concerning her hostile work environment claim, for at least the following reasons:

1. The evidence adduced by plaintiff does not show a workplace permeated with discriminatory behavior. Plaintiff testified that she was subjected to harassment by receiving two notes containing sexual propositions. The two notes were received three weeks apart. Plaintiff did not bring the first note to the attention of any supervisory personnel, she continued to work, and there is no evidence that receipt of the note in any way affected her ability to do her job. There was nothing physically intimidating about the notes, and while plaintiff was upset by them, they did not subject her to ridicule or humiliation in the workplace because they were not publicly posted, but privately delivered. After the second note came to the attention of a supervisor, the employer intervened and there was no further misconduct by Simeon. This is simply not a workplace "permeated with discriminatory intimidation, ridicule and insult." No reasonable jury could conclude otherwise. *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 58–59 (2d Cir.2004).

2. Assuming *arguendo* that Simeon could be considered plaintiff's supervisor, ACS management took immediate and effective corrective action when it learned of the harassing conduct. Within 40 minutes Plaintiff was immediately moved to a work station where a supervisor (Amer) could (and did) keep Simeon away from her. A supervisory employee interviewed both plaintiff and Simeon the following day. Simeon was disciplined, and the harassment ended. Management's corrective action was both immediate and effective.[3]

■ From plaintiff's responsive brief, it is clear that her real complaint is that any corrective action short of firing Simeon was, in her opinion, insufficient to redress the situation. However, all management has to do is stop the harassment. Plaintiff was not entitled to have ACS redress the situation in her preferred manner—she was only entitled to have the situation addressed in an manner that was reasonably calculated to end the harassment. *Cooper v. Wyeth Ayerst Lederle*, 106

---

**3.** It is undisputed that ACS had an anti-sexual harassment policy. Plaintiff's claim that the policy was not posted or otherwise communicated to her is of no moment. The law requires the employer to have the policy in place. If there is a policy, and if the policy is invoked (as it was in this case) to redress the harassment (which occurred in this case), the employee has no basis to complain. *DeWitt v. Lieberman*, 48 F.Supp.2d 280, 287, 290–91 (S.D.N.Y.1999).

F.Supp.2d 479, 495 (S.D.N.Y.2000) (citing *Snell v. Suffolk County,* 782 F.2d 1094, 1103–04 (2d Cir.1986)). That management's response caused the harassment to end is beyond cavil. Therefore, plaintiff got everything to which she was entitled.

3. If Simeon was not plaintiff's supervisor, it can hardly be said that ACS, having knowledge of the harassment, did nothing about it. As recounted above, ACS took action that caused the harassment to end. Therefore, ACS cannot be liable for co-worker hostile work environment.

Plaintiff has simply not adduced sufficient evidence to get to a jury on a hostile work environment claim. Defendant is entitled to summary judgment dismissing her hostile work environment claim.

*Constructive Discharge*

■ To succeed on a claim of constructive discharge, plaintiff must adduce competent evidence from which a reasonable trier of fact could conclude that the employer "deliberately created working conditions that were so difficult or unpleasant that a reasonable person in employee's shoes would have felt compelled to resign." *Spence v. Maryland Cas. Co.* 995 F.2d 1147, 1156 (2d Cir.1993) (internal quotations and citations omitted).

There is no possible way that a reasonable person in plaintiff's shoes could have felt compelled to resign. The employer had credited Durant's complaint. ACS disciplined Simeon. The harassment stopped. Nothing in the record would support a finding that the employer deliberately created working conditions that made life too difficult for Durant.

Again, Durant's position is made clear in her brief: the only way to make her feel comfortable was for ACS to fire Simeon. But Durant had no right to such a response. And it was unreasonable for her to conclude that she needed to resign when she was not harassed after ACS disciplined Simeon. Certainly it was unreasonable for

her to conclude that life at ACS was intolerable just because Durant's complaint about Simeon's stopping at an adjacent cubicle was not addressed within half an hour!

The constructive discharge claim must be dismissed.

*Claim Under Executive Law 296*

■ Plaintiff brings parallel claims under federal and state law. To the extent her claims fall under the rubric of Executive Law 296, defendant is entitled to summary judgment for the same reason that her Title VII sexual harassment claims were dismissed, since the two statutes utilize the same standard for employer liability for sexual harassment/hostile work environment. There is no evidence in the record that ACS "became a party to [the harassment] by encouraging, condoning, or approving it." *State Div. of Human Rights v. St. Elizabeth's Hospital,* 66 N.Y.2d 684, 687, 496 N.Y.S.2d 411, 487 N.E.2d 268 (1985).

*Intentional Infliction of Emotional Distress*

■ Intentional infliction of emotional distress ("IIED") is an extremely disfavored cause of action. To prevail, plaintiff must prove extreme and outrageous conduct that transcends all bounds of decency, and that is regarded by civilized society as atrocious and utterly intolerable. *Marley v. Ibelli,* 203 F.Supp.2d 302, 311 (S.D.N.Y. 2001). Nothing that is alleged against ACS comes anywhere close to meeting that standard.

■ Moreover, plaintiff's IIED claim is time barred. Such a claim is governed by a one year statute of limitations. CPLR 215(3). Plaintiff's last day of work was April 16, 2003. She commenced this lawsuit in 2005, well beyond the limitations period.

## Conclusion

Defendant ACS's motion for summary judgment dismissing the complaint is granted. As ACS is the last remaining defendant in the case, the Clerk of the Court is directed to close the file.