Nicole SCHIANO, Plaintiff–Appellant,

v.

QUALITY PAYROLL SYSTEMS, INC. and Michael Tintweiss, Defendants–Appellees.

**Docket No. 05–4115 CV.**

United States Court of Appeals, Second Circuit.

Argued: Feb. 17, 2006.

Decided: April 24, 2006.

Janet M. Connolly, Goldberg & Connolly (Robert C. Buff, of counsel), Rockville Centre, NY, for Defendants–Appellees.

Elizabeth E. Theran, Attorney, U.S. Equal Employment Opportunity Commission (James L. Lee, Deputy General Counsel, Carolyn L. Wheeler, Acting Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, of counsel), Washington, DC, for Amicus Curiae U.S. Equal Employment Opportunity Commission in support of Plaintiff–Appellant.

Before: KEARSE and SACK, Circuit Judges, and STANCEU, Judge.*

SACK, Circuit Judge.

The plaintiff, Nicole Schiano, appeals from the judgment of the United States District Court for the Eastern District of New York (Denis R. Hurley, *Judge*) granting summary judgment to the defendants on her claims, *inter alia*, that she was subjected to a hostile work environment on the basis of sex in violation of federal and state law. For purposes of the defendants' motion for summary judgment, it is undisputed that defendant Michael Tintweiss, a vice president of the defendant Quality Payroll Systems, Inc. ("QPS"): told Schiano that if she wanted a raise she was "sleeping with the wrong employee" (a reference to her romantic relationship with another co-worker) and repeated similar comments several times during the course of the next five months; at an office Christmas party in the presence of other employees, placed his hand on Schiano's skirt and upper thigh and photographed himself doing so; asked if they could go together to Schiano's hotel room after the party; and, on several occasions, approached Schiano from behind while she was working, leaned into her, and placed his hands on her back, neck, and shoulders. The district court concluded that this behavior was not severe or pervasive enough to create a hostile work environment and therefore granted summary judgment to the defendants.

"The question of whether a work environment is sufficiently hostile to violate Title VII is one of fact." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir.2001). On a motion for summary judgment, the question for the court is whether a reasonable factfinder could conclude, considering all the circumstances, that "the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse.*" *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) (internal quotation marks omitted; emphasis in *Whidbee*). We cannot say, as a matter of law, that no reasonable jury could so conclude in this case. According-

* The Honorable Timothy C. Stanceu, of the United States Court of International Trade, sitting by designation.

ly, we vacate in part the judgment of the district court and remand for further proceedings.

## BACKGROUND

"In setting forth the facts underlying this appeal from the district court's grant of summary judgment to the defendants, we construe the evidence in the light most favorable to the plaintiff, drawing all reasonable inferences and resolving all ambiguities in [the plaintiff's] favor." *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 217 (2d Cir.2006) (citation omitted).

Schiano worked as a corporate financial assistant for QPS. The defendant Michael Tintweiss, as a vice president of QPS, had the power to discipline and to terminate the employment of all non-officer QPS employees, including Schiano.

In October 2001, Schiano began dating Matthew Barbis, a co-worker at QPS with whom she had been friends since before she began working for the company. The incidents that gave rise to this lawsuit began at a QPS office Christmas party in December 2001 and continued until Schiano resigned from her employment in May 2002.

The Christmas party took place at a restaurant in Alexandria, Virginia, where a QPS office was located. QPS employees, including Shiano and Tintweiss, who had traveled to Alexandria from the company's Long Island office, stayed overnight at a nearby hotel.

At the party, Tintweiss and Schiano began talking about a possible raise for Schiano. After Schiano suggested an amount, Tintweiss told her that if she wanted that much money she was "sleeping with the wrong employee."[1] Schiano contends that she immediately complained to QPS President Bert Geller about Tintweiss's comment, but that he "appeared to laugh off" her complaint. Dep. of Nicole Schiano, Feb. 10, 2004 (Schiano Dep.), at 34.

Later that evening, while Schiano sat at a table and spoke with other QPS employees, Tintweiss put his hand on Schiano's thigh, pulling her skirt up a few inches, and took a picture of his hand placed on her leg. The picture is included in the record as Plaintiff's Exhibit F in Support of Cross–Motion for Summary Judgment. Although Schiano denies it, Tintweiss asserted that while he took the picture he said something to the effect of "let's take one to get Matt (Matthew Barbis) jealous and see what he's missing." Aff. of Michael Tintweiss dated Oct. 27, 2002, at 2–3. Schiano testified that she pushed Tintweiss's hand away and told him to stop. She says that she told Julius Veit, the supervisor of QPS's tax and accounting department, that Tintweiss was making her uncomfortable.

As the Long Island employees were leaving the party, Schiano said something about the hotel rooms being nice; in response, Tintweiss asked if he could come to her hotel room with her. Schiano told him he should look at Veit's room instead.

Tintweiss's allegedly inappropriate behavior continued after the Long Island employees returned to their office. In the QPS lunchroom, in front of Barbis and other QPS employees, Tintweiss again told

1. There is some dispute over the precise sequence of events in this conversation. Schiano testified in her deposition that Tintweiss asked her how large a raise she should receive and that she responded with $100 per week. In the defendants' version of the conversation, Schiano initially joked that she wanted a raise of a million dollars, and Tintweiss made his "sleeping with the wrong employee" remark in response to that initial joking request.

Schiano that she was "sleeping with the wrong employee." And on five or six occasions, while Schiano was seated at her desk, Tintweiss approached her from behind, placed his hands on her back or neck, and leaned into her while she worked. Twice, Tintweiss said that because Barbis was afraid of flying, Schiano should take Tintweiss on vacation with her instead. Commenting on Barbis's fear of flying, Tintweiss yet again told Schiano that she was "sleeping with the wrong employee." He also talked with Barbis about how "hot" Schiano was and what type of underwear she wore.[2]

Schiano testified that from January through April 2002, she complained to Veit about Tintweiss's behavior on a weekly basis. Schiano says that she eventually asked Veit to assemble a partition around her cubicle to prevent having her work interrupted by other employees and to insulate her from Tintweiss and his behavior. She also testified that Tintweiss became visibly upset after the partition was installed, repeatedly leering at Schiano as he passed her cubicle.

In late April or very early May 2002, Barbis spoke with Veit about Tintweiss's behavior. On May 2, Veit spoke with Schiano and asked her permission to raise the issue with QPS President Geller. Veit met with Schiano again the following day. He asked her to put her complaints about Tintweiss in writing. Schiano said she would draft a letter during the following weekend. But she ultimately decided not to memorialize her complaint in writing because she "was unsure of how it was going to be used and what repercussions [it] would have." Schiano Dep. at 89. Veit then asked Schiano to speak to Geller

about the situation. Schiano refused, stating that she "would not speak with him because [she] was feeling very intimidated and that [she] was caught in the middle." Id. Veit then told Schiano that from that point forward she should no longer report to him, but should report directly to Geller instead. At home that night, Schiano prepared a letter of resignation. The next day, May 7, 2002, Schiano presented Veit with her resignation letter. She told him that she "was very upset at the comments the previous day that [she] was to report to another manager and that [she] no longer felt that [she] wanted to work in that environment." Id. at 92. Veit apologized to her. Recanting his prior statement, he told her that she should continue to report to him.[3]

Schiano declined to withdraw her resignation. On January 30, 2003, she brought this lawsuit alleging that QPS and Tintweiss had violated both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and New York State Human Rights Law ("NYSHRL"), by subjecting her to a hostile work environment that culminated in her constructive discharge and by retaliating against her when she complained. The suit also asserts New York state law claims against Tintweiss in his individual capacity as an aider and abettor.

In a memorandum and order dated July 12, 2005, the district court granted summary judgment to the defendants and dismissed Schiano's complaint. See Schiano v. Quality Payroll Sys., Inc., No. 03–CV–492, 2005 WL 1638167 (E.D.N.Y. July 12, 2005). The court concluded that Tintweiss's misbehavior was not severe or pervasive enough to constitute a hostile work environment under Harris v. Forklift Sys-

---

**2.** The defendants state that these comments were initiated by Barbis, not by Tintweiss.

**3.** In his affidavit, Veit states that he had actually told Schiano this the day before after "I thought about it and I cooled down." Aff. of Julius B. Veit, dated Sept. 1, 2004, at 4.

*tems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The court reasoned that, when compared with the facts outlined in relevant decisions of the Second Circuit and other federal courts of appeals, "the behavior to which Schiano was subjected (occasional touching, rude comments, and hostile stares) cannot be said to amount to more than relatively innocuous inciden[t]s of overbearing or provocative behavior. As such, they do not reach the requisite level of employment-altering severity" to support a hostile work environment claim. *Schiano*, 2005 WL 1638167, at *5 (internal quotation marks and citation omitted). The district court also concluded that Veit's quickly rescinded change in Schiano's reporting structure did not constitute an adverse employment action necessary to sustain a claim for retaliation. *Id.* at *7–*8. Applying the same standard as for Title VII claims, the court granted summary judgment for the defendants on Schiano's state law claims also. *Id.* at *8–*9.

Schiano appeals.

## DISCUSSION

### I. Standard of Review

As noted, "we construe the evidence in the light most favorable to the plaintiff, drawing all reasonable inferences and resolving all ambiguities in [her] favor." *Colavito*, 438 F.3d at 217 (citation omitted). We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir.1997); *see also Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Holtz*, 258 F.3d at 69 (hostile work environment and retaliation claim).

### II. Quid Pro Quo

■ On appeal, Schiano characterizes her case as based both on quid pro quo sexual harassment and a sex-based hostile work environment. "Although the terms 'quid pro quo' and 'hostile work environment' do not appear in the text of Title VII, they are useful to distinguish between 'cases involving a threat which is carried out and offensive conduct in general.'" *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 57 (2d Cir.2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)) (emphasis omitted).

■■ "When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII." *Ellerth*, 524 U.S. at 753–54, 118 S.Ct. 2257. If, however, a "claim involves only unfulfilled threats, it should be categorized as a hostile work environment claim which requires a showing of severe or pervasive conduct." *Id.* at 754, 118 S.Ct. 2257. "The terms quid pro quo and hostile work environment are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogeth-

er, but beyond this are of limited utility." *Id.* at 751, 118 S.Ct. 2257 (emphasis omitted).

▮ The defendants argue that in characterizing her claim as quid pro quo sexual harassment, Schiano has impermissibly raised a new argument on appeal that was not properly briefed before the district court. Generally, a plaintiff must fairly present his or her arguments to the district court in order to pursue them on appeal. *See, e.g., Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 106 (2d Cir.2005). But we are hesitant to suggest a rigid rule that would require plaintiffs to use the words "quid pro quo" or "hostile work environment" in the district court or else be treated as having waived such claims. Because these terms are judicially created for analytical purposes, not distinctions in the statute itself, we think it is most appropriate, at least in the case before us, to look to the substance of the alleged misconduct of which the plaintiff complains rather than the terms used to describe it. If, for example, a plaintiff were to argue that she had been demoted for refusing to respond positively to her supervisor's sexual overtures, we would think that the assertion would preserve her quid pro quo claim even if she never used the phrase "quid pro quo" in the district court to describe it.

▮ But even if Schiano properly made and preserved her quid pro quo claim, it fails on the merits. To state a quid pro quo claim, Schiano must show a "tangible employment action," i.e., that an "explicit ... alteration[ ] in the terms or conditions of employment" resulted from her refusal to submit to Tintweiss's sexual advances. *Mormol*, 364 F.3d at 57 (internal quotation marks and citation omitted);

*see also Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 97 (2d Cir.2002). A tangible employment action usually " 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' " *Mormol*, 364 F.3d at 57 (quoting *Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257). But Schiano makes no allegation and presents no evidence that she was passed over for an expected raise or that any of her material benefits were actually in jeopardy. Indeed, Schiano testified that her salary was increased in January 2002, after Tintweiss's behavior at the Christmas party. While Tintweiss's remarks about Schiano "sleeping with the wrong employee" are relevant to Schiano's hostile work environment claim, there is no evidence that that comment, when made at the Christmas party, could be objectively perceived as a "threat" or that it was subsequently carried out.

## III.  Hostile Work Environment

▮ "When the workplace is permeated with discriminatory intimidation, ridicule, and insult [based on, *inter alia*, sex] that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris*, 510 U.S. at 21, 114 S.Ct. 367 (internal quotation marks and citations omitted); *see also Alfano v. Costello*, 294 F.3d 365, 373–74 (2d Cir.2002) (same). A jury must be able to conclude that the work environment both objectively was, and subjectively was perceived by the plaintiff to be,[4] sufficiently hostile to alter the conditions of employment for the worse. *Id.; see*

---

4. The defendants do not appear to contest that Schiano subjectively experienced a hostile work environment. Indeed, they ac-

knowledge that Schiano complained to co-workers and a social worker about Tintweiss's conduct in late 2001 and early 2002.

*also Feingold v. New York,* 366 F.3d 138, 150 (2d Cir.2004).

In *Harris,* the Supreme Court provided a nonexhaustive list of factors the factfinder should consider in determining whether a hostile work environment exists, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367. These four factors guide the factfinder in making what is ultimately a factual, not a legal, determination. The Supreme Court noted that whether sexual harassment alters the conditions of employment "is not, and by its nature cannot be, a mathematically precise test," *id.* at 22, 114 S.Ct. 367, and "can be determined only by looking at all the circumstances," *id.* at 23, 114 S.Ct. 367. "[N]o single factor is required." *Id.* Perhaps, "[a]s a practical matter" this standard may "let[ ] virtually unguided juries decide whether sex-related conduct engaged in (or permitted by) an employer is egregious enough to warrant an award of damages," but there is "no test more faithful to the inherently vague statutory language" that we are bound to apply. *Id.* at 24, 25, 114 S.Ct. 367 (Scalia, J., concurring).

We thus cautioned in *Richardson v. New York State Department of Correctional Service,* 180 F.3d 426 (2d Cir. 1999), that hostile work environment claims present "mixed question[s] of law and fact" that are "especially well-suited for jury determination." *Id.* at 437 (internal quotation marks omitted); *see also Holtz,* 258 F.3d at 75 (describing question of hostile work environment as "one of fact"). "[T]hat the facts are undisputed does not automatically mandate summary judgment; rather, summary judgment is appropriate only where application of the law to those undisputed facts will reasonably support only one ultimate conclusion." *Richardson,* 180 F.3d at 438.

" 'An Article III judge is not a hierophant of social graces' " and is generally in no better position than a jury to determine when "conduct crosse[s] the line between boorish and inappropriate behavior and actionable sexual harassment." *Holtz,* 258 F.3d at 75 (quoting *Gallagher v. Delaney,* 139 F.3d 338, 347 (2d Cir.1998)) (some quotation marks omitted). In this case, as in *Holtz,* "[a]lthough that line is admittedly indistinct, its haziness counsels against summary judgment." *Id.*[5]

---

5. In granting summary judgment, the district court relied on our decision in *Alfano,* in which we overturned a jury verdict in favor of the plaintiff because we concluded that the evidence submitted at trial was insufficient as a matter of law to demonstrate a hostile work environment. But in that case, we noted that in some instances it may be more appropriate to overturn a jury verdict after trial than to grant summary judgment beforehand. While it may be proper to deny summary judgment pre-trial to give the plaintiff a chance to connect the dots during his or her presentation of evidence, once the trial has completed, the plaintiff's claims must be evaluated according to the evidence he or she actually presented to the jury:

In a hostile work environment case, it may well be a proper exercise of the district court's broad discretion to allow the plaintiff to build her case partly by adducing incidents for which the link to any discriminatory motive may, in the first instance, appear tenuous or nonexistent. The plaintiff must, however, establish at trial that incidents apparently sex-neutral were in fact motivated by bias. Thus, at the close of her case, to the extent that the plaintiff relies on facially neutral incidents to create the quantum of proof necessary to survive a Rule 50 motion for judgment, she must have established a basis from which a reasonable fact-finder could infer that those

The district court was of course right to consult the case law when determining whether a rational factfinder could conclude that the plaintiff was subjected to a hostile work environment. But the court appears to have resolved Schiano's claims by examining each factor from *Harris* in isolation, comparing and contrasting its presence in Schiano's allegations with the fact patterns from previous cases.

The Supreme Court cautioned in *Harris* that its references to cases describing "environments so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers merely present some especially egregious examples of harassment. They do not mark the boundary of what is actionable." *Harris*, 510 U.S. at 22, 114 S.Ct. 367 (internal quotation marks and citations omitted). We have similarly warned that "the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases." *Richardson*, 180 F.3d at 439 (internal quotation marks and citation omitted); *see also Whidbee*, 223 F.3d at 70; *Torres v. Pisano*, 116 F.3d 625, 631–32 (2d Cir.1997). Prior cases in which we have concluded that a reasonable juror could find that the work environment was objectively hostile do not "establish a baseline" that subsequent plaintiffs must reach in order to prevail. *Richardson*, 180 F.3d at 439.

The district court attempted to distinguish *Howley v. Town of Stratford*, 217 F.3d 141 (2d Cir.2000), which involved a supervisor loudly berating a female employee in front of her subordinates with a "verbal assault includ[ing] charges that Howley had gained her office of lieutenant only by performing fellatio." *Id.* at 154.

The district court concluded that Tintweiss's conduct was not as humiliating as the conduct in *Howley*. *See Schiano*, 2005 WL 1638167, at *6. But in *Howley* we observed that that single incident was so severe that it could have created a hostile work environment even in isolation, unrepeated and unaccompanied by other conduct. *See Howley*, 217 F.3d at 154. Schiano, by contrast, does not assert that any one of Tintweiss's acts was alone sufficient to create an unlawful hostile work environment. She alleges an ongoing pattern of sexually offensive and humiliating conduct. Whether any single act was as severe as the single act in *Howley* is not dispositive. By extracting the question of how "humiliating" an instance was from the larger context of the case, the district court failed to evaluate the relevant conduct as a whole.

We think that the district court similarly erred in concluding that Tintweiss's conduct did not, as a matter of law, unreasonably interfere with Schiano's job performance because it did not rise to the same level of interference as did the misbehavior in *Howley* or *Holtz*. *See Schiano*, 2005 WL 1638167, at *6. According to the plaintiff, Tintweiss's harassment was so distracting that it motivated her, in part, to request that a partition be set up specifically around her desk. The defendants argue that Schiano requested a cubicle solely because she wanted privacy from all employees in general, but that cannot be resolved on this record as a matter of law.

More important, "[w]hether or not the harassment interferes with an employee's ability to work is merely one factor to be considered when looking at the totality of circumstances to determine whether a hostile work environment has been creat-

---

incidents were infected by discriminatory animus.

*Alfano*, 294 F.3d at 377.

ed." *Terry v. Ashcroft,* 336 F.3d 128, 149 (2d Cir.2003). Tintweiss's conduct might not have incapacitated her, but a reasonable juror could infer that it did have an effect on her working conditions. *See Harris,* 510 U.S. at 25, 114 S.Ct. 367 (Scalia, J., concurring) ("[T]he test is not whether work has been impaired, but whether working conditions have been discriminatorily altered."); *id.* at 25, 114 S.Ct. 367 (Ginsburg, J., concurring) ("[T]he plaintiff need not prove that his or her tangible productivity has declined as a result of the harassment. It suffices to prove that a reasonable person subjected to the discriminatory conduct would find, as the plaintiff did, that the harassment so altered working conditions as to make it more difficult to do the job." (internal quotation marks and citations omitted; alterations incorporated)).

In *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759 (2d Cir.1998), we affirmed a district court's grant of summary judgment to the defendants. The plaintiff in that case alleged that her supervisor told her that she had been "voted the 'sleekest ass' in the office" and on another occasion "deliberately touched [her] breasts with some papers that he was holding in his hand." *Id.* at 768.[6] But the fact that such actions did not constitute a hostile work environment in Quinn's case, when considered as part of all the circumstances there, does not establish a rule that similar actions in another context would not, as a matter of law, amount to one. These determinations are to be made on a case by case basis considering all the individual facts at hand.

Similarly, the district court cited our decision in *Mormol* for the proposition that "occasional threats or insinuations that employment benefits will be granted or denied based on sexual favors do not suffice to create a hostile work environment." *Schiano,* 2005 WL 1638167, at *5 (citing *Mormol,* 364 F.3d at 58–59). As an abstract proposition of law, we think this statement to be incorrect. Threats or insinuations that employment benefits will be denied based on sexual favors are, in most circumstances, quintessential grounds for sexual harassment claims, and their characterization as "occasional" will not necessarily exempt them from the scope of Title VII. *See Ellerth,* 524 U.S. at 753–54, 118 S.Ct. 2257 (characterizing threats that are carried out as quid pro quo claims and unfulfilled threats as hostile work environment claims). The particular threats and insinuations in *Mormol* did not rise to the level of a hostile work environment because they "were few and occurred over a short span of time, most of which plaintiff spent on vacation," *Mormol,* 364 F.3d at 59, and they were "not sufficiently severe to overcome [their] lack of pervasiveness." *Id.* It cannot be said that Tintweiss's conduct towards Schiano was similarly insufficient in her case.[7]

---

**6.** The plaintiff in *Quinn* also made numerous other allegations, which the *Quinn* panel excluded from its analysis because they were either untimely or could not be attributed to the employer. *See Quinn,* 159 F.3d at 766–68. But, as the *Quinn* panel noted, it would be equally acceptable for a court first to consider whether the alleged actions in their totality constituted a hostile work environment and then to determine which acts could be attributed to the defendant at the second stage of analysis. *See id.* at 767 n. 8 (citing

*Distasio v. Perkin Elmer Corp.,* 157 F.3d 55 (2d Cir.1998)). Indeed, the approach taken by the *Distasio* panel may place courts in a better position to evaluate a plaintiff's allegations within the larger context of the working environment.

**7.** In *Mormol* the employer intervened swiftly to suspend the supervisor and then to fire him. *See Mormol,* 364 F.3d at 56. If the employer had been slower to punish his misbehavior, that neglect would have been an additional factor to consider in assessing the

There are, of course, cases in which it is clear to both the trial court and the reviewing court that after assessing the frequency of the misbehavior measured in light of its seriousness, the facts cannot, as a matter of law, be the basis of a successful hostile work environment claim. As already noted, it is the law of this Circuit that "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact," *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir.1997), and "may be appropriate even in the fact-intensive context of discrimination cases," *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.), *cert. denied*, 534 U.S. 993, 122 S.Ct. 460, 151 L.Ed.2d 378 (2001); *see also Holtz*, 258 F.3d at 82, 84. But we cannot say that no reasonable jury would conclude that the misbehavior complained of in Schiano's case, in light of, *inter alia*, its frequency, the nature of the words exchanged, the context in which they were uttered, the physical nature of some of acts complained of, the response of the harasser to the steps Schiano took to repel the unwanted advances, and the

effect of it all on Schiano's ability to do her job, was severe or pervasive enough to alter the conditions of Schiano's employment for the worse. Even assuming that, as in *Richardson*, "[r]easonable jurors may . . . disagree about whether these incidents would negatively alter the working conditions of a reasonable employee[,] . . . the potential for such disagreement renders summary judgment inappropriate." *Richardson*, 180 F.3d at 439.[8]

## IV. Retaliation Claim

In order to establish a prima facie case of retaliation, Schiano must show that: (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir.2002). Schiano asserts on appeal that she suffered three adverse employment actions: (1) her "adverse" work environment, (2) the change in reporting structure, and (3) constructive discharge.[9]

---

plaintiff's overall work environment. It seems reasonable to view unpunished misconduct as being more harmful or harassing than punished misconduct. *Cf. Mack v. Otis Elevator Co.*, 326 F.3d 116, 125 (2d Cir.2003) (" 'It is precisely because the supervisor is understood to be clothed with the employer's authority that he is able to impose unwelcome sexual conduct on subordinates.' " (quoting *Ellerth*, 524 U.S. at 763, 118 S.Ct. 2257)).

**8.** Although the district court, in dismissing the action in its entirety, did not distinguish between defendants' QPS and Tintweiss, we affirm the district court's dismissal of the Schiano's federal sexual harassment claim against Tintweiss because an individual defendant cannot be held personally liable under Title VII. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–14 (2d Cir.1995), *abrogated on other grounds by Ellerth, supra*. Individual defendants may, however, be sued in their

personal capacities for sexual harassment under the NYSHRL. *See id.* at 1313; *see also, infra*, section V.

**9.** To the extent that Schiano continues to assert a separate constructive discharge claim on appeal, her claim fails because she cannot show that "her employer deliberately and discriminatorily created work conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Ferraro v. Kellwood Co.*, 440 F.3d 96, 101 (2d Cir.2006) (internal quotation marks and citation omitted). In Schiano's case, as in *Whidbee*, "[a]s ineffective or even incompetent as [the company's] handling of the matter may have been, it does not rise to the level of deliberate action required by our precedent." *Whidbee*, 223 F.3d at 74 (denying summary judgment to defendants on plaintiffs' hostile work environment claim but granting summary judgment on their con-

Both allegations as to adverse employment actions (1) and (3), if proved true, would fail to establish a prima facie case of retaliation. For neither does Schiano allege—and for both she plainly cannot establish on the basis of the evidence in the record—the required "causal connection between the protected activity and the adverse employment action." *Feingold*, 366 F.3d at 156 (internal quotation marks omitted). The relevant inquiry for Schiano's retaliation claim must focus on the retaliation she suffered for complaining about the harassment, not on the initial harassment itself. Schiano must show that the defendants took an adverse employment action against her in response to her complaints. They did not, in this case, based on the uncontested record evidence.

■ With respect to the change in Schiano's reporting structure, we conclude that it does not rise to the level of an adverse employment action. "An adverse employment action is a 'materially adverse change in the terms and conditions of employment.'" *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 85 (2d Cir. 2001) (quoting *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000)), *abrogated on other grounds, Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices

unique to a particular situation." *Fairbrother v. Morrison*, 412 F.3d 39, 56 (2d Cir.2005) (internal quotation marks omitted; alteration incorporated).[10]

■ In this case, whether or not the change in reporting structure can properly be characterized as adverse treatment, Veit rescinded the change the following day in response to Schiano's complaint, and did so with an apology. We conclude that no reasonable factfinder could find that Veit's conduct rose to the level of an adverse employment action. We therefore affirm the district court's dismissal of Schiano's retaliation claims.

## V. State Law Claims

■ Because the district court granted summary judgment for the defendants on Schiano's federal claims, it concluded that, *a fortiori*, summary judgment should also be granted on Schiano's state law hostile work environment and retaliation claims and her aider and abettor claim against Tintweiss. *See Schiano*, 2005 WL 1638167, at *8–*9. Hostile work environment and retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII. *See Smith v. Xerox Corp.*, 196 F.3d 358, 363 n. 1 (2d Cir.1999); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714–15 (2d Cir.1996).

For the same reasons that Schiano has failed to present a triable issue of fact for her federal retaliation claim, her state retaliation claim also fails. Schiano's hostile

---

structive discharge claim); *see also Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir.1983) (finding no constructive discharge in part because evidence showed that defendant wanted employee to remain in its employ).

**10.** As in *Fairbrother*, we need not and do not decide whether a "tangible employment ac-

tion" under *Ellerth* in its discussion of quid pro quo sexual harassment claims, *see supra* section II, is different from an "adverse employment action" as that term is understood in the employment discrimination case law. *See Fairbrother*, 412 F.3d at 53 n. 6; *see also Jin*, 310 F.3d at 93.

work environment claim under the NYSHRL, however, like her claim under Title VII, should proceed to trial. Schiano's derivative claim under the NYSHRL that Tintweiss aided and abetted the creation of a hostile work environment similarly survives the defendants' motion for summary judgment. *See Feingold,* 366 F.3d at 157–58.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed with respect to the plaintiff's federal and state retaliation, quid pro quo harassment, and constructive discharge claims, and with respect to plaintiff's federal sexual harassment claim against Tintweiss in his individual capacity. With respect to Schiano's federal and state claims based on her allegations of a hostile work environment against QPS and the state claim against Tintweiss for aiding and abetting the creation of a hostile work environment, the judgment of the district court is vacated and remanded for further proceedings.